<hr/>

## JENKINS et al. *v.* TROTT.

Where the master of a vessel employs a broker to procure a freight, and the latter introduces to the master a party having merchandize to ship, which the master declines to take on the terms offered; but, a few days after, while the broker is still employed to procure a freight for him on better terms, concludes, through another broker, a bargain with the same party on the terms first proposed, and pays him his brokerage, he will be bound to pay a brokerage to the first broker.  *Per Curiam:* To enable the defendant, under such circumstances, to defeat the broker's claim for commissions, by taking the identical offer, through another broker or directly by himself, would enable him to commit a fraud upon the plaintiff.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Lockett* and *Goold*, for the plaintiffs.  *Bradford*, for the defendant, cited 2 Rob. 63, 163.  1 An. Rep. 6.  The judgment of the court was pronounced by

EUSTIS, C. J.  This is an action on behalf of the plaintiffs, who are shipbrokers in New Orleans, against the defendant, who is master of the ship Monument, for their brokerage on the freight of the ship from this port to Alicant, being five per cent on the amount.  The district judge gave the plaintiffs judgment for $230, being two per cent on the freight, and the defendant has appealed.

The first thing to be ascertained is, whether the defendant employed the plaintiffs as brokers. This is denied; but we think the fact is satisfactorily established by the testimony of concurrent witnesses. It appears that *Reynaud, Cucullu & Co.*, having tobacco and staves to be shipped to Alicant, applied to the plaintiffs to procure them a vessel. They opened negotiations with *Reynaud, Cucullu & Co.* for the freight, and introduced to them the defendant. *Reynaud, Cucullu & Co.* offered $16 per hogshead for the freight of the tobacco, and $30 per thousand for staves. This offer was declined by the defendant at the time; but, a few days after, through another broker, the bargain was concluded with *Reynaud, Cucullu & Co.* on the terms proposed by them, and the defendant paid the last broker his commissions.

It is undoubtedly true that, on the refusal of the defendant to accept the offer for freight, the negotiation was ended, so far as relates to the parties making and refusing the proposal. But on refusing, the defendant, as *Reynaud* himself swears, addressed himself to *Jenkins*, saying that, if he could not get him $17 for tobacco and $30 for the staves, he would not take the freight at all. *Ballister*, another witness, states that he heard *Trott* tell *Jenkins*, four or five days after he first came to the office, that if he could get a little more for this freight he would take it.

The employment of a broker being verbal, and frequently private and strictly confidential, and only known to the parties, the proof of the fact is attended with difficulty when a party is held to legal proof; the continuance of the employment is subjected to the same difficulty, as to its proof. We find no evidence of any termination of the relations between the defendant and the plaintiffs in the business about which they were originally employed; on the contrary, we infer their continuance from the declarations of witnesses; and, in coming to this conclusion, we have taken into consideration the origin and continuance of the intercourse between the plaintiffs and the defendant. The plaintiffs did not seek out the defendant or call upon him. On the contrary, their relations appear to have originated in the plaintiffs' office, and the matters transpired there, except what passed between the defendant and *Reynaud, Cucullu & Co.*, at their counting house.

To hold that the defendant could, under these circumstances, defeat the plaintiffs' claim for commissions, by taking the identical offer which the plaintiffs gave the defendant the means of accepting, through the offices of another broker or directly by himself, would enable him to commit a fraud upon the plaintiffs. Had the transaction been closed under the agency of the plaintiffs, the commission would have been earned; and certainly the defendant was bound, in good faith, not to take any steps which would defeat their claim for compensation, without at least giving them fair notice that their agency was at an end.

Nor do we think it at all material in this case, that the fact was well known that the house of *Reynaud, Cucullu & Co.* had this freight for Alicant. It of course was known as the brokers were charged with procuring a ship for them, and the negotiations with the defendant would of themselves have made it public. There appears to have been no reserve about the matter. Still less is it of consequence that, the second broker did not acquire his information as to the freight from the defendant. The difficulty arises from the defendant, though the house of *Whitney & Co.* were the regular men of business of the ship, having employed the plaintiffs to negotiate for a freight. He was certainly at liberty to employ any number of brokers, but their claim for compensation is not

dependant on his will.   The agency of the second broker, and the payment of his commissions, have nothing to do with this case, so far as the plaintiffs' rights are concerned.   It is the defendant himself who took the offer of the freight, knowing that it was the same which the plaintiffs had been employed by him to treat about, and they being authorized at the time to get for him a freight on better terms.   It appears to us that on every principle of justice the plaintiffs are entitled to recover their brokerage from the defendant.

Had this case been presented to the Court of King's Bench on a claim of the brokers, under the usage of London, we are satisfied that it would have been allowed.   Russell on Factors, 163 and 164.

In *Wilkinson* v. *Martin*, 8 Carr. & Payne, p. 1, it was held, that to enable a broker to recover a commission on the sale of a ship, the mere fact of his having introduced the purchaser to the seller will not be sufficient; but, if it appears that such introduction was the foundation on which the negotiation proceeded, the parties cannot afterwards, by agreement between themselves, withdraw the matter from the broker's hands, and deprive him of his commission.   That the broker will be entitled to his commission, if he was up to a certain time the agent or middle man between the parties, although the contract be afterwards completed without his instrumentality or interference.

In *Burnett* v. *Bouch*, 9 Carrington & Payne, 620, it was held that the usage in London is that, when a broker has introduced the captain of a ship and a merchant together, and they, by his means, enter into some negotiation as to the intended voyage, the broker is entitled to commission if a charter party be effected between them for that voyage, even though they may employ another broker to prepare the charter party, or may write the charter party themselves. That if a broker be authorized by both parties, and acting as the agent of each, communicates to the merchant what the ship owner charges, and also communicates to the ship owner what the merchant will give, and he names the ship and the parties, so as to identify the transaction, and a charter party be ultimately effected for that voyage, this broker is entitled to his commission; but, if he does not mention the names so as to identify the transaction, he does not get his commission to the exclusion of another broker, who afterwards introduces the parties personally to each other.

*Judgment affirmed.*