JOSEPH L. DAUTERIVE, Appellant, v. WEST INDIA TRANSPORTATION CORPORATION

(December 14, 1925, Opinion and Decree.)
(January 4, 1926, Rehearing Refused.)
(February 2, 1926 Writ of Certiorari and Review Denied by the Supreme Court.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Brokers—Par. 15, 17.**
A broker is entitled to his commission when he has performed his part of the contract.

2. **Louisiana Digest—Brokers—Par. 18.**
His principal cannot deprive him of his commission by failing to execute the contract.

3. **Louisiana Digest—Obligations—Par. 17.**
A verbal agreement between parties where their minds have met upon all essential details is binding between them although they may have agreed that they would thereafter commit the contract to writing.

Appeal from Civil District Court, Div. "A", Hon. H. C. Cage, Judge.

This is a suit for broker's commission. There was judgment for defendant, and plaintiff appealed.

Judgment reversed.

Quintero and Quintero, of New Orleans, attorneys for plaintiff, appellant.

Merrick and Schwarz and Chas. Rosen, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J.    This is a suit for broker's commission.

The plaintiff alleged that in April, 1919, in his capacity of broker he bought in Havana, Cuba, for account of the defendant one million gallons of molasses from the Cuban American Sugar Company of New York for August delivery at a price of not less than two cents a gallon; that said purchase was confirmed by defendants by letter dated June 21, 1919; that it was agreed between the plaintiff and the defendant prior to the purchase of the molasses, that the defendant was to pay the plaintiff for his services in purchasing said molasses the usual commission of one-fifth per cent per gallon; that the one-fifth per cent per gallon on the million gallons amounts to two thousand dollars which is the amount due to plaintiff for his services.

Defendant filed a general denial but admitted the letter of June 21, 1919; they averred that "the whole deal was abandoned because plaintiff and his principals, the sellers, would not carry out and did not carry out the sale and delivery of said molasses"; they further alleged that later on they purchased directly from the Cuban American Sugar Company 4,500,000 gallons of molasses at 2½ cents per gallon with which plaintiff had no connection whatever".

There was judgment for defendant, and plaintiff has appealed.

In the year 1919, plaintiff was a broker residing in Havana. The defendants were engaged in the molasses business in Baltimore. Their President was J. F. Harper. The Cuban American Company did business in Havana and New York. Their President was R. B. Hawley. The plaintiff had been acquainted with both Harper and Hawley for many years.

On March 31, 1919, Harper wrote to plaintiff telling him that several cables had passed between them for the purchase of molasses but that so far they had not been able to get together; that owing to the condition of the market in New Orleans, Philadelphia and Baltimore, it was impossible to pay more than two cents per gallon Cuba to which must be added commissions; that there was a considerable better market

than that figure if they had the molasses in storage where they could handle it in carload lots; that he had secured the co-operation of the Inter-Ocean Oil Co. to furnish him with tank steamers to transport all the molasses he might want to bring up and all the tank cars from a million and a half to three million gallons; that he was forming a corporation to be known as the "West India Transportation Company", one-half of which would be owned by the Inter-Ocean Oil Co.; that there was a wonderful opportunity to build up a very successful business; that they had no connection on the Island; that they expected to buy their molasses wherever they could purchase it the cheapest and that accounted for the telegrams they had sent him; they had just received advice from one of their Philadelphia parties saying that they could probably use a million and a half gallons; that they presumed that he was in the brokerage business and would deal with any one who wanted to buy molasses; it was possible that a good business might develop between their corporation that was forming and himself; that the market was very unsatisfactory and that they could do but a limited business at present; but he could assure him that they would not make any firm offers or undertake to enter into any contract which they could not carry out, if he could see fit to make any offer on the tank situation and cars at Havana, that the Company would treat his proposition in a very fair manner.

On April 7th the plaintiff, Dauterive, wrote to Harper acknowledging receipt of his above letter, and concluded as follows:

"I am at present in touch with planters offering about one million or one and a half million gallons; if you can make me a firm offer of two cents plus ¼c commission, I might be able to swing the deal; this is for April delivery, as after that they will either store it with the Cuban D. Co. or sell locally." That he had taken offices at the Banco Nacional 514 and that he would be very glad to offer him, such cargoes as he might want to purchase.

On April 9th, Harper wired to Dauterive:

"Practically no demand now, get your principals consign cargo; we pay freight, duty and furnish steamer and storage and will guarantee price not less than two cents F.O.B. steamer Cuba, answer."

On April 10, Dauterive wired Hawley the contents of the above message.

To which Hawley answered on April 12th:

"Advise your friends send vessel immediately million gallons on terms stated I assume their entire responsibility, answer."

On April 12th, Dauterive wired a reply to Harper as follows:

"Have closed deal for you as per your conditions your cable ninth send ship immediately to Puerto Padre load one million gallons from Chaparara consign ship to Cuban American when can we expect vessel ready to load answer."

To this cable Harper answered April 13th "cable received will arrange steamer advise depth water".

Dauterive answered Harper April 15th:

"Cable received depth 23 feet can load in 24 hours. When can we expect steamer. Have notified shipper."

On April 12th Dauterive wired to Hawley:

"Your telegram received. Have advised consignees to send vessel to Chaparra immediately for one million gallons molasses on the terms cabled me on the eighth inst. and etc."

On April 17th Dauterive again wired to Harper:

"When can we expect steamer answer."

On April 18th Harper wired to Dauterive:

"Find vessel Inter-Ocean assigned for April 25th been carrying heavy Mexican crude and so constructed impossible clean they will assign us another vessel but some delay unavoidable can you hold deal open hope to advise definitely first week answer."

On April 19th Dauterive wires Harper:

"Deal held open hurry steamer and advise."

On April 17th upon the letterhead paper of the "West India Transportation Corporation" Harper writes to Dauterive:

"We have been thrown in the air very badly over the discovery that the tank steamer which the Inter-Ocean Oil Co. assigned us for (to) bring up this cargo of molasses on April 25th has some 27 Cylindrical tanks with man-holes not large enough to admit a man to get inside and clean them and as the vessel has been carrying heavy Mexican crude for seven years, it would cost more to clean her than the entire cargo is worth. We simply had to give it up and get another vessel. The Inter-Ocean Oil Co. are making every possible effort to do it the earliest possible moment but I do not deem it just and fair to your principals to withhold advice of the situation so I am cabling to see if you can hold the deal open but of course, if they are not willing to wait and need to move the molasses, I suppose the deal will have to be called off and see what we can do at a later date."

Again upon the letterhead paper of the defendant company, on June 21st Harper writes to Dauterive:

"You probably have thought it very strange that you did not hear from us earlier in regard to the million gallons of molasses which we engaged to take from you under terms and conditions in our telegram namely: 'Bring the molasses here to Baltimore and guarantee your principals a price not less than 2 cents a gallon F. O. B. steamer Cuba we to furnish steamer and pay duty and all charges plus your usual commission.' We have had no end of difficulty in arranging for a steamer. The Inter-Ocean Oil Company were willing to assign us a vessel to bring up this cargo but they had nothing of a suitable size that could get into the harbor of Porta Padrea except one vessel that I wrote you about that was practically impossible to clean. As above recited, after no end of worry, annoyance and delay, we finally succeeded in chartering from the U. S. Shipping Board, a brand new steel tank steamer of 4800 tons deadweight, capable of carrying about 850,000 gallons of molasses. This steamer is to be delivered to us on or about August first, and will be available for a cargo during the month of August or the early days of September. Now Mr. Dauterive, while the molasses market is exceedingly dull and very difficult to dispose of molasses at any reasonable price, we recogniez the fact that we are under contract to you and your principals to carry out our arrangements with you and this we are prepared to do as soon as the steamer is delivered to us which will be around August first, possibly the fifteenth.

"We hope you will not think that because you did not hear from us that we are in anywise going to welch on our contract. We want you to understand and your principals as well, that we are out to keep any contract we make. Advise us by cable on receipt of this letter what your wishes are and that of your principals."

By wire dated June 23rd, Harper again announces inability to comply with contract sooner and concludes "Mail formal contract immediately and confirm by cable".

Dauterive did not answer either the wire or the letter; they ended the correspondence between him and Harper, and it does not appear that Dauterive had any further communication with Hawley, for the following reasons:

The next and last phase in the case is that by agreement dated July 9, 1919, the Cuban American Sugar Co., represented by R. B. Hawley, President, sold to the "West India Transportation Corporation" four million gallons molasses made by the centrals Chapparas and Delicias in Cuba for the price of 2½ cents per gallon, to be delivered at seller's wharf in steamers to be pro-

vided by buyer beginning in August and ending in December first.

The plaintiff drew a draft of $2000 upon the defendants who refused to honor same.

The evidence satisfies us that Harper, for the benefit of the defendant corporation about to be organized, the "West Indian Transportation Corporation", employed the plaintiff, a molasses broker in Cuba, to the knowledge of Harper, to buy molasses in Cuba; that the defendant corporation was subsequently organized and that it then adopted, approved, and confirmed, and took as its own, the contract made by Harper; that the plaintiff procured the Cuba American Sugar Company as vendor for one million gallons to be delivered at a port in Cuba in April, 1919. This entitled plaintiff to a commission. 9 C. J. S. 85 p. 590, 591; S. 96 p. 613.

The evidence further shows that the contract procured by the plaintiff was not consummated owing to the failure of the defendants, employers and principals, to receive delivery of the molasses. The defendants were to "furnish the steamers to receive the molasses, and they did not do it, and confessed their inability to do it, until August when in the meanwhile on July 9th they purchased four million gallons from the Cuban American Sugar Co., through the same Hawley, President, and of course abandoned or ignored their prior contract for one million gallons. It was therefore the fault of the defendants if the first contract with plaintiffs for one million gallons was not consummated.

The grounds of defense are four fold:

1st That no commission is due a broker unless the sale takes place.

As a general rule that is true, but with this proviso: that the responsibility or fault for the failure of the sale is not attributable to the party who has employed the broker; for if the fault is with his principal the broker is entitled to his commission.

The broker to buy has earned his commission the moment he has found a vendor; he loses it only if the vendor fails to sell. The broker employed to sell is entitled to his commission as soon as he has found a purchaser; he loses it only when the prospective purchaser fails to execute the contract. In other words, the broker is entitled to his commission, when he has performed his part of the contract. Slattery vs. Hussey, 4 Orl. App. 65, affirming the District Court and quoting Mechen on Agency, Sec. 612 and 4-A and Eng. Enc. of Law, p. 972-975. 8 Orl. App., 211; 14 Orl. App. 424; Gurley vs. Loeffler and Authorities there quoted, No. 7848 Orl. App. Bk. 56.

In the succession of Fairchild No. 7848 Orl. App., Bk. 56 this court said:

"Of course where the broker has produced a purchaser able and willing to buy, and the failure to complete the sale results from the act or fault of him who has promised the commission the case is different for the commission is then due." Affirming 8 Orl. App. 210; 4 Orl. App. 65; 14 Orl. App. 424; also 9 C. J. S. 87, p. 597; S. 102 p. 623.

A party cannot take advantage of his own breach of contract. 13 C. J. 607 S. 632.

2nd. Defendants again contend that the parties had in contemplation a written contract to conclude their agreement. We do not find that to be a fact established by the record. The telegrams that passed between the parties evidence a complete meeting of minds concerning the thing and the price. But even if it were so, a verbal agreement between parties is binding although they understood and contemplated that it should be committed to writing. In De Soto Building Co. vs. Kahnstarn, No. 7627 Orl. App. Bk. 56, this court held:

"A verbal agreement between parties where their minds have met upon all essential details constitutes a contract be-

tween them and binds them at once, although they may have agreed that they would thereafter execute a formal instrument containing the terms of their present agreement, unless it appears that it was the will of the parties that they should be bound only if and when the formal instrument was executed."

This opinion was affirmed in Stauffer vs. Harty, No. 8043, reviewing the jurisprudence upon this point and quoting many authorities from this state and from others.

3rd That the contract was abandoned by the parties. Assuming that to be the truth, we have shown by the above authorities that the abandonment by the defendants did not affect plaintiff's rights. But we are rather inclined to the belief that far from being abandoned, the defendants improved upon the contract by increasing it to four millions. The fact remains that the plaintiff procured the Cuban American Co. as a vendor of molasses in Cuba, and that after a contract for the sale of one million gallons had been made to the defendants by said Company represented by its President, Hawley, he proceeded to New York, without any apparent break in the original negotiations, and there effected a sale to the defendants for four million gallons. See Jenkins vs. Trott, 3 La. Ann. 671; Lestrade vs. Perrera, 6 La. Ann. 398; Hornbeck vs. Gilmer, 110 La. 500, 34 South. 651; 8723 Orl. App. Bk. 67; Ct. App. No. 2 p. 391.

4th Defendants lastly argue that the sale of the four million gallons was not procured by the plaintiff and therefore he is not entitled to a commission on that transaction. The plaintiff is not suing for a commission on that transaction; therefore this question is not before us.

The sale of the four million gallons was mentioned only for the purpose of showing that the Cuban American Sugar Co. had been introduced to defendants by the plaintiffs.

It is therefore ordered that the judgment appealed from be reversed and set aside, and it is now ordered that the defendants the West India Transportation Corporation be condemned to pay to the plaintiff herein Joseph L. Dauterive the sum of Two Thousand dollars with five per cent per annum interest from judicial demand January 19, 1920, till paid and all costs of suit; that the writ of attachment herein issued be maintained and that plaintiff's privilege resulting from the attachment and garnishment be recognized and enforced and that plaintiff be paid by preference out of the property attached herein.

WESTERFIED, J. Dissents.