**SPIRO v. CORPORA et al.***

No. 16420.

Court of Appeal of Louisiana. Orleans.

May 3, 1937.

Edward S. Spiro, of New Orleans, for appellant.

John E. Fleury and Frank H. Langridge, both of Gretna, for appellee Mrs. Julia A. Maloney.

Harold J. Moore, of New Orleans, for appellee Luigi Corpora.

McCALEB, Judge.

The plaintiff appeals from a judgment dismissing his action against the defendants. He bases his demand upon a written contract under which he claims certain real estate broker's commissions, together with attorney's fees.

The material facts of the case are not contested, and we find them to be as follows:

The plaintiff is a licensed real estate broker, conducting his business in the city of New Orleans and its vicinity.

Mrs. Julia A. Maloney, one of the defendants, owns certain real property situated in New Orleans, which she values at the sum of $4,000. Being desirous of disposing of this real estate by sale or exchange, she employed the plaintiff as her agent to locate a purchaser.

Luigi Corpora, the other defendant, likewise employed the plaintiff as his agent to sell certain property owned by him in the parish of Jefferson, which he values at $8,-000.

As a result of his dual representation of both defendants, plaintiff brought them together and proposed that the parties exchange their properties at the values established by them and that Mrs. Maloney assume an existing mortgage on Corpora's property in the sum of $4,000 to equalize the difference between the purchase prices. This suggestion met with the favor of the defendants and, on May 30, 1933, they entered into a written contract whereby Mrs. Maloney promised to sell her property to Corpora for $4,000 and Corpora agreed to convey his property to Mrs. Maloney for $8,000. This contract is executed upon an "Exchange or Trade Agreement" form adopted by the New Orleans Real Estate Board and provides, among other things, that the respective vendors agree to pay the plaintiff, as agent, a commission of 4 per cent. on the purchase price of the prop-

erty, which is declared to be earned upon the signing of the agreement.

In prospect of the acquisitions to be made by the parties, titles to the real estate involved in the transaction were examined. After Corpora had perused the title to Mrs. Maloney's property, he refused to consummate the deal, giving as his reason that the measurements of the land as described in her title were incorrect. He had a survey made of this property which disclosed that it contained a smaller quantity of land than that shown by the title (which was based upon a prior survey of the property).

Mrs. Maloney claims that the measurements as exhibited by her title are correct and testifies that she is ready, able, and willing to carry out her agreement. But Corpora refuses to take the title on the ground that the survey, which he caused to be made of the Maloney property, reveals that he will not receive all of the land represented by the measurements contained in the offer of sale. Under these circumstances, it is obvious that the correctness of the respective contentions of the parties cannot be established except by a suit for specific performance, and thus far neither party to the contract has seen fit to institute such an action.

With affairs in this state, the plaintiff has been unable to collect, from either defendant, the commissions covenanted for in the agreement, and he has filed this suit against both of them, to enforce their respective obligations to him, on the theory that he has done everything required of him and that, by the terms of the contract itself, the commissions have been earned and are due and payable whether or not the promise of sale and purchase are ever completed.

It is manifest, from the foregoing statement of the case, that the problem to be determined involves an interpretation of the effect of the contract between the parties. The courts of this state, on numerous occasions, have had before them this type of agreement, and we turn to these adjudicated matters to guide us to the correct solution.

■ It is well settled that a real estate broker, employed by a vendor to negotiate a sale or exchange of property, is entitled to his commission when he has found a purchaser, even though the sale is never consummated *owing to the fault of the vendor.* See Gristina v. Nunez, 8 La.App. 531; Loyacano v. Succession of Thomp-son, 4 Orleans App. 345; Gurley & Parkinson v. Loeffler, 14 Orleans App. 424; Palmisano v. Stewart, 3 La.App. 66; Dauterive v. West India Transportation Co., 3 La.App. 319; Barry v. Guiffria, 10 La.App. 123, 120 So. 878, and Clesi v. Thacher, 12 La.App. 55, 125 So. 194.

■ On the other hand, it has been held that a real estate agent is not entitled to a commission from his principal where the contract cannot be consummated because the prospective purchaser refuses to take title to the property and the principal is without fault in the premises. See Devereaux & Ashby v. Rochester, 10 La.App. 430, 120 So. 658.

It will be readily discerned that the foregoing adjudications afford little or no assistance in the solution of the question confronting us, for, here, Mrs. Maloney earnestly contends that the measurements of her land as exhibited by her title are correct, and she signifies her willingness to complete the deal but is unable to do so because Corpora refuses to accept her title. We are unable to determine in this suit whether or not her title to the property is free from defect. By the same token, we cannot declare that the objections made by Corpora to the measurements of her land are not well founded. Both parties are ostensibly in good faith. If the exchange agreement can be interpreted as meaning that the real estate agent is entitled to a commission at the time same was signed, irrespective of whether or not the vendors are able to convey a merchantable title, then plaintiff is entitled to recover. On the other hand, if the agreement is interpreted to mean that the plaintiff's commissions are earned only in the event the respective sales can be consummated by delivery of titles which are free from defects and that the claimed defects do not exist through the fault of either of the defendants, then the plaintiff's suit against them is bound to fail.

The plaintiff maintains that, under this exchange agreement, his commission is earned at the time the contract is signed, and the fact that it cannot be consummated for any reason is not his concern; that he, admittedly, has brought the parties together and performed all services required of him and that, as a consequence, he is entitled to recover the commissions claimed from each. He points with confidence to the agreement itself which provides that the agent's commission is earned upon the ac-

ceptance of the offers and also stipulates: "In the event either title is not valid, and cannot in reasonable time and at reasonable expense, be made valid, this contract shall be null and void, without prejudice, however, to the agent's commission, *which is earned upon the signing of this agreement.*" (Italics ours.) And further that "The commission is earned on the signing of this agreement and shall not be affected by any subsequent agreement of the parties hereto, or by the annullment of this contract by any court."

The same contention, as is made by the plaintiff in this case, was invoked by the defendant realtors in the case of Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38, 40, wherein the Supreme Court had occasion to interpret a contract practically identical with the one now under consideration.

In that matter, the plaintiff had contracted to trade certain real property, belonging to him, for real estate owned by one Powell. His agreement was contingent upon his ability to obtain a $9,500 loan from any New Orleans bank, homestead, or mortgage office upon the property of Powell. He had deposited with the real estate agency the sum of $600 in cash and his note for a like amount in connection with the proposal to purchase. Thereafter, being unable to obtain the contemplated loan on Powell's property, he brought suit against the real estate agency for the return of his deposit. The realtors resisted the action and claimed that there were commissions due it, payable out of the deposit in its hands, because, under the provisions of the contract of exchange, these commissions were earned on the date of its execution, irrespective of the plaintiff's success in obtaining a loan on Powell's property. The Supreme Court denied the defendant's claim for a commission and held that the agreement should be interpreted in connection with article 1945 et seq. of the Civil Code in order to ascertain the true intent of the parties and that this intention is to be determined by the words of the contract when these are clear and explicit, *and lead to no absurd consequence.* It was found that the words in the instrument were "clear and explicit" that plaintiff was to be paid a commission, whether the transaction was completed or not, and even though the motive, which prompted him to sign such a contract, could not possibly be attained. "But (said the court) we cannot give effect to these provisions when to do so would lead to an 'absurd consequence.'" (Words in parenthesis ours.) And the court further held:

"Construing the contract as a whole and in the light of the testimony adduced, it is patent that what Boisseau wanted to do was acquire Powell's property and to give his in exchange for part of the price, and that he intended to pay the commission *only in case the proposed transaction could be consummated.* He knew that, if this were done through this agent, he would be due it a commission, because that is the usage 'generally practiced in affairs of the same nature' of that which formed the subject of the contract entered into. As already stated, his offer was conditioned upon his ability to secure a certain loan. It can hardly be said that he intended to pay the agent $605 if he failed in the attempt, and most assuredly, if he were sane, *he did not intend to pay the commissions if the title to either his lots or the property of Powell was defective and could not 'in a reasonable time and at reasonable expense be made valid,'* in which event the contract would be impossible of fulfillment, or in case the contract should for any reason be annulled 'by any court.'

"Yet that is precisely what Vallon & Jordano, Inc., would have us construe the words in the contract with reference to the payment of commissions to mean. To do so would be to leave out of consideration the manifest intent of one of the parties, and, in the language of the Civil Code (art. 1945), 'if there was a difference in this intent, there was no common consent, and consequently no contract.' No sane man would obligate himself to pay a real estate agent a commission for the bare privilege of listing his property for sale or exchange or for the privilege of making an effort to purchase that which belongs to another. Yet that is what this contract, according to the agent's views, means. It provides that, even though the title prove defective and cannot be perfected, and even though the contract should be null and void for that reason, or if it should be declared null by any court, still the commissions are due.

"The contract seems to have been written mainly in the interest of the real estate agent. Its provisions for the payment of the agent's commission are snares and traps to catch the unwary, and are so drastic, harsh, and out of accord with those usually found in such instruments that no court of

justice will enforce them in the absence of proof positive that those who signed the instruments understood and intended to be bound by them." (Italics ours.)

It is obvious from the foregoing that the Supreme Court has placed its stamp of disapproval upon this type of contract, in so far as it concerns the agent's right to a commission, where the agreement cannot be consummated either because the title to the real estate involved is defective or because of a lack of mutuality between the parties thereto.

Counsel for plaintiff places much reliance in the case of Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556, 558, wherein the Supreme Court affirmed the decision of this court (Matthews Bros. v. Bernius, 12 La. App. 203, 123 So. 389) on writs of certiorari and review. In that matter, Mrs. Bernius offered to sell certain real estate standing in her name (through the plaintiff realtor) which she believed belonged to her. After the offer was accepted by the prospective purchaser, it was discovered that the property was owned by the community of acquêts and gains and Mrs. Bernius' husband refused to convey a title to the purchaser. Later, the real estate agents sued Mrs. Bernius for their commission and one of her grounds, in defense of the action, was that the commissions were not due in the event the sale of the property could not be consummated. The Supreme Court, in deciding adversely to her contention, held, first, that a married woman, under Act No. 132 of 1926, could bind herself personally for a community debt; and, second, that "Where, as was the case here, the broker's contract was to find a purchaser, his right to his commission is dependent upon whether he has found and produced one, who is able, ready, and willing to buy on the terms prescribed by his principal. When the broker produces such a purchaser, he is entitled to his commission, although the sale is not consummated, because of the inability of the vendor to comply with his offer. 2 C.J. pp. 769, 770. The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title. R. J. & B. F. Camp Lumber Co. v. Tedder, 78 Fla. 183, 82 So. 865."

■ The above finding is clearly expressed, and we experience difficulty in attempting to reconcile it with the language used by the court in the later case of Boisseau v. Vallon & Jordano, supra. However, it is interesting to note that, in the Bernius Case, the court did not discuss in detail the terms and conditions of the contract signed by Mrs. Bernius in favor of her real estate agent, whereas, in the Boisseau Case, much space was devoted to a consideration of the exchange agreement, particularly with reference to its legal effect. It is also apparent that when the Boisseau Case was presented, the Bernius decision was not directed to the attention of the court, for the latter is neither cited nor discussed in the opinion. At all events, the Boisseau Case is the last word of the Supreme Court on this subject and our judgment is controlled by that decision, inasmuch as the contract there interpreted is practically identical with the one now under review.

■ We therefore hold that neither Mrs. Maloney nor Corpora intended to become liable to plaintiff for commissions in case the sales could not be completed; that they are not at fault with respect to their inability to consummate the exchange of the real estate involved and that, consequently, the plaintiff's suit must be dismissed.

■ Our attention has been called to the fact that Corpora has further contended that he is within his rights in refusing to accept Mrs. Maloney's title to the property for the reason that this property belongs to the community of acquêts and gains existing between her husband and herself. We find no merit in this point because it has not been shown that Mr. Maloney at any time refused to execute or join in the necessary deed in order to transfer the property to Corpora. This property was acquired in Mrs. Maloney's name and Mr. Maloney joined in the act of purchase and recognized that Mrs. Maloney was buying the same with her separate and paraphernal funds under her separate administration and control. The case is therefore dissimilar to that of Mathews Bros. v. Bernius, supra, for there it appeared that Mr. Bernius refused to execute the deed to the prospective purchaser, while here no such showing is made.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.