husband and the court were powerless to take that right away from her.

■ The correctness of the judgment condemning the owner in solido with the real estate agent for the amount of the deposit, which was conceded to have been received and remained in the possession of the real estate agent, is also questioned. While it is true that the real estate agent was the representative of the owner to sell the property, the offer of purchase designated the real estate agent as a depositary for the sum of $850.00 or 10% cash of the purchase price, and specifically provides that in the event the title is not valid and cannot be made so in a reasonable time at a reasonable expense, the contract will be null and void and the real estate agent would be obliged to return to the purchaser the amount of the deposit. Under these circumstances, the defendant owner cannot be held liable in solido. An obligation in solido is not presumed; it must be expressed. C.C. art. 2093.

Counsel for the owner argues that the trial judge also erroneously granted judgment against him for the expenses in connection with the examination of the title and act of sale, because plaintiff is presumed to know the law and therefore should have taken the precaution to have the wife sign the contract.

■ At the time the plaintiff's offer was submitted and accepted there was nothing to indicate to the purchaser that the owner's wife would object to the sale. There was no reason to anticipate a declaration of family home for a part of the building was rented to others as an apartment. The wife was apprised of what was taking place but entered no protest. It was only after the offer was accepted by her husband, the title examined, and the act of sale prepared that she interposed her objection. Plaintiff then gave defendant a reasonable time to straighten out the matter by securing his wife's consent and it was only after they were unsuccessful that suit was instituted. Plaintiff at all times having dealt with the defendant in good faith and in no way being warned of any misunderstanding or disagreement between the husband and wife relative to the sale of the property, it is our opinion that the trial judge properly ordered the expenses in connection with the sale to be borne by him.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment be amended by rejecting the plaintiff's demand for specific performance of the contract and also amended by relieving the defendant owner, Joseph Michel, of liability in solido with the real estate agent who was alone liable for the return of the deposit; and in all other respects, the judgment is affirmed; appellant to pay the costs of the appeal, all other costs to be paid in accordance with the judgment of the lower court.

O'NIELL, C. J., does not take part.

### GUY L. DEANO, Inc., v. MICHEL.*
#### No. 16861.

Court of Appeal of Louisiana. Orleans.
May 30, 1938.

*Rehearing denied June 13, 1938.

Maurice B. Gatlin, of New Orleans, for appellant.

McCloskey & Benedict and Bernard J. McCloskey, all of New Orleans, for appellee.

JANVIER, Judge.

This is a suit by a real estate brokerage corporation for a commission claimed to have been earned when it obtained for a client, who had listed for sale his property, a purchaser ready, willing and able to buy at the price at which the prospective vendor had agreed to sell. The contention of defendant is that he could not transfer the property because his wife had registered in the conveyance office a declaration that the property constituted the "family home" and that, therefore, no commission is due.

On July 22, 1936, Joseph B. Michel listed for sale with Guy L. Deano, Inc., the property in New Orleans bearing the municipal number 4925-27 South Tonti Street. The price at which it was listed was $8,-500.00 cash and in the listing contract it was agreed that, should a purchaser be secured within 90 days, Michel should pay a commission, which was fixed at 4 per cent. It was also stipulated that, should it be necessary to employ counsel to collect the commission, an attorney's fee of 25 per cent. on the amount of the commission would be due.

On September 11, 1936—within the 90-day period—the brokerage firm secured a purchaser in Miss Victoria M. Baumann, who executed a written offer to purchase. at the price demanded. In connection with the offer Miss Baumann made a deposit of $850.00, 10 per cent. of the amount of the agreed purchase price. On September 12, 1936, this offer was accepted in writing by Michel, the said acceptance containing the following stipulation concerning the commission of the broker:

"I * * * agree to pay the commission of Guy L. Deano, Inc., amounting to Three Hundred and Forty ($340.00) Dollars, which is earned upon acceptance of this offer, irrespective of the validity of title."

At the time of the acceptance of the offer there were no encumbrances registered or recorded against the property, but, before the property could be transferred, Mrs. Michel, wife of the defendant and living with her husband, proceeding under authority of Section 2 of Act No. 35 of 1921, Ex.Sess., filed and caused to be registered in the conveyance records of the Parish of Orleans, an authentic declaration that the said property constituted the "family home". As a result of this registration, the proposed transfer could not be made since the said statute, in Section 1, provides that when such declaration is so placed of record, "such * * * property shall not thereafter be validly sold or mortgaged during the marriage by the husband, except with the consent of his wife * * *".

Two suits ensued: One by Miss Baumann for specific performance of the contract to sell, or, in the alternative, for the return of the deposit and for reimbursement of such costs as she had expended, and the other—the suit now before us—by the real estate brokerage corporation for the commission alleged to have been earned and for the attorney's fee provided for by the contract. These suits were consolidated for trial in the District Court. In the suit by Miss Baumann for specific performance it was held that the registration of Mrs. Michel's declaration prevented the transfer of the property and that, therefore, the deposit and the costs expended by her should be returned. See Bauman v. Michel, La.Sup., 181 So. 549, decided May 2, 1938. In the case at bar there was judgment in the district court in favor of plaintiff for the amount of the commission and for the attorney's fee. Michel has appealed.

Plaintiff relies upon the well-established rule which is stated by the Supreme Court in Mathews Brothers v. Bernius, 169 La. 1069, 1070, 126 So. 556, 558, as follows:

"* * * Where * * * the broker's contract was to find a purchaser, his right to his commission is dependent upon whether he has found and produced one, who is able, ready, and willing to buy on the terms prescribed by his principal. When the broker produces such a purchaser, he is entitled to his commission, although the sale is not consummated, be--

cause of the inability of the vendor to comply with his offer. 2 C.J. pp. 769, 770. The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title. * * *"

Plaintiff calls attention, also, to various other cases in which the same rule was recognized. Gristina v. Nunez, 8 La.App. 531; Loyacano v. Succession of Thompson, 4 Orleans App. 345; Gurley & Parkinson v. Loeffler, 14 Orleans App. 424; Palmisano v. Stewart, 3 La.App. 66; Dauterive v. West India Transportation Co., 3 La.App. 319; Barry v. Guiffria, 10 La. App. 123, 120 So. 878; Clesi v. Thacher, 12 La.App. 55, 125 So. 194; Mercer v. Dambly, 16 La.App. 354, 133 So. 455.

On behalf of defendant it is contended, on the other hand, that the rule recognized in the Bernius Case and for so long followed prior thereto has been almost completely abrogated in later cases (citing Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38 and Spiro v. Corpora et al., La.App., 174 So. 145) and that now, where there is a contract which provides that the broker's commission is earned immediately upon acceptance of the offer to purchase and regardless of whether the sale is actually consummated, such contract leads to "an absurd consequence" and will not be enforced.

It is true that in both of the cases cited recovery of a commission was denied to a broker who had negotiated a contract. But we think that, in neither of those cases was there involved a contract similar to that with which we are concerned and that the facts presented in those two cases were vastly different from those found here. Let us first analyze Boisseau v. Vallon & Jordano. There there was involved an exchange of properties. Boisseau, subject to two conditions, agreed to buy another property owned by Powell: First, that his own property would be taken in partial payment, and, second, that he could obtain on the other property a loan of $9,500.00. Powell accepted the offer. The transaction was not consummated because the loan of $9,500.00 could not be obtained by Boisseau. Boisseau, having made a deposit in connection with the offer, brought suit for the return of the deposit, but the brokers claimed that they were entitled to their commission. In fact they claimed that they were entitled to commissions from each of the parties. Judgment was rendered for the brokers against Boisseau but,

on appeal, the Supreme Court held that he was not obligated to pay the commission because he had made his offer conditional upon his being able to obtain the loan and that, when he could not obtain it, his obligation terminated (141 So. page 39):

"The testimony shows that plaintiff made a reasonable bona fide effort to effect a loan on the residence, but failed."

■ Having reached that conclusion, the court could have rested its decision on that fact, but it chose to go further and to discuss the terms of the contract for the payment of the commission, and, having done so, it said that the contract very evidently did not set forth the true understanding which Boisseau had when he entered into it. The contract provided that the commissions were earned upon the acceptance of the offer and that they should be due regardless of whether or not either title should prove defective. These features of the contract—quite different from that which is involved here—were discussed by the court. It was said that obviously no sane man would intend to obligate himself to pay a commission on a transaction of that kind, which, because of defective title on the part of either party, might never be consummated. That is quite understandable. Where a real estate broker negotiates a sale and the transaction, because of defective title, cannot be completed, the broker is, of course, entitled to his commission from the vendor because he has done all that he contracted to do. He has produced a purchaser ready, able and willing to buy, and the sole reason for failure to consummate is that the vendor himself has failed to produce a merchantable title. But, when the purchaser, as a part of the purchase price, offers to exchange another piece of property and the title to the other property is defective, then the broker should not be entitled to his commission from the first party because he has not, in truth, produced a purchaser able to buy. The purchaser produced is able to buy only by paying with a defective title. Therefore it is quite proper to say that one of the parties did not intend any such result as that he would be liable for the commission, even though the transaction should fail because of defective title on the part of the other party. But in the Boisseau Case the court went further and said that the commission should not be due regardless of which title should prove to be defective; that the party who makes the offer and who agrees to

pay the commission should not be liable even though the transaction should fail because of defect in his own title:

"* * * most assuredly * * * he did not intend to pay the commissions if the title to either his lots or the property of Powell was defective * . * *".

We cannot but feel that the reference to "his lots" was inadvertently placed in the opinion. If that statement was intentionally and deliberately made, then the effect of the decision would be to overrule the long line of cases which have firmly established the doctrine that "when the broker produces a purchaser he is entitled to his commission, although the sale is not consummated, because of the inability of the vendor to comply with his offer". When the court based its release of Boisseau upon the fact that he could not obtain the loan upon which his offer was conditioned, it made it unnecessary that the other condition of the contract be discussed. We think it obvious that where, in an exchange of properties, the broker requires that both parties must pay commission. regardless of defects in either title, such contracts should not be enforced. But we see no reason why, in such case, either party should not be liable if the transaction fails because of defect in his own title, and we respectfully conclude that that is all the Supreme Court intended to say in the Boisseau Case.

Let us next consider Spiro v. Corpora, supra, the other case relied upon by defendant. There we found, as was found in the Boisseau Case, a contract involving an exchange of properties, and we noticed that that contract contained stipulations identical with those involved in the contract considered in the Boisseau Case; that the commissions were to be considered earned upon acceptance of the offers and were due even though the transaction, because of defect in either title, could not be concluded. In the Spiro Case one of the parties, as the result of a survey, reached the conclusion that the property tendered by the other party did not contain the quantity of land shown by the title documents and he refused to· complete the transaction. The other party maintained that the measurements were correct, but neither took any legal action. Concerning this controversy we said (174 So. page 146):

"* * * it is obvious that the correctness of the respective contentions of the parties cannot be established except by a suit for specific performance, and thus far neither party to the contract has seen fit to institute such an action."

The broker brought suit against both parties, claiming from each, respectively, the commission which each would have owed had the transaction been consummated. When the case reached us, we, following what we believed to be the rule laid down in the Boisseau Case, dismissed the suit as against both, feeling that the contract which was sought to be enforced did not evidence the true intent of the parties since it made each of the vendors, or transferors, liable for a commission regardless of whose title might prove to be defective. We felt that neither intended to be bound in the event the title tendered by the other should prove faulty. It is true that in that case we held that neither party was liable for a commission, but we said that we did so because it was impossible to determine which was in the wrong. All that we actually determined was that such a contract is unenforcible since it does not evidence the true intent of the parties in that it makes both parties to an exchange contract liable for a broker's commission regardless of the facts which prevent the consummation of the transaction.

The contract which is now before us contemplates a sale of one piece of property—not an exchange in which two are involved—and the contract makes the prospective vendor liable for the broker's commission should his title prove to be defective. There is nothing in such a contract which can be said to be different from what the prospective vendor actually intended. In fact, as we have shown, it is well settled that a vendor who, through a broker, secures a purchaser ready, willing and able to buy, is liable for the broker's commission even though, through fault of the vendor, or through defect in his title, the sale is not consummated. Thus, the contract here merely sets forth what the law would have enforced even had there been no such contractual stipulation.

It follows that, since the transaction was not consummated because the prospective vendor could not complete the transfer, he is liable for the commission which he contracted to pay.

Since it has been necessary to employ counsel to collect the commission, he is made liable by his contract for·the fee of

the counsel which, in the said document, is fixed at 25 per cent.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed