ELLIS, Judge.
This is a suit by the plaintiff, a licensed real estate agent, against the defendant for a commission plaintiff alleges is due him for securing Marcellus Fontenot and Sam D. Sonnier who were desirous of purchasing the defendant’s property but who refused to consummate the sale because of an alleged defect in defendant’s title.
The defendant filed an exception of no right or cause of action which was overruled by the District Court and upon the merits judgment was rendered in favor of the plaintiff and against the defendant for the amount of the commission and it is from these judgments that the defendant has prosecuted a suspensive appeal.
There is no dispute as to the facts. The record and the briefs filed on behalf of plaintiff and defendant show that the plaintiff procured from Fontenot & Sonnier an offer to purchase certain property in the City of Lake Charles, which offer was accepted by the defendant on September 18, 1951, ánd under the terms of the agreement the prospective purchasers were granted a 60 day option and within that period notified the defendant that they were ready, able and willing to exercise their option, however, upon examination of the title attorneys for Fontenot & Sonnier notified the defendant, who had acquired the property by donation from her former husband, W. L. Green, that the conveyance would have to be signed by the donee and donor, otherwise the title would not be marketable as the disposable portion could not be determined until the death of the donor. The *725 donor, W. L. Green, refused to join in the conveyance and the sale was not consummated. Demand was then made on the defendant for the payment of the commission which was refused and this suit followed.
The exception of no right or cause •of action filed by the defendant was based upon the proposition that the donation'under consideration ' constituted a complete transfer of title under LSA-C.C. Article 1503 and could only be set aside by some subsequent act of the donor over which the donee, M,rs. Green, had no control, and, therefore, the case is controlled by the doctrine announced in Guy L. Deano, Inc., v. Michel, 141 La. 233, 185 So. 9, Id., La.App., 181 So. 551; Leaman v. Rauschkolb, La.App., 1 So.2d 338; Neal v. Halliburton, La.App., 19 So.2d 625; Blackshear v. Landey, La.App., 46 So.2d 688; Cabral v. Barkerding, La.App., 50 So.2d 516. The cited cases involved suits by real estate brokers upon a contract with the respective defendants to sell their property, but in each case the defendant’s wife recorded a declaration of family home which effectively prevented the consummation of the sale. In rejecting the plaintiffs’ demands, the court recognized the general rule that where the broker’s contract was to find a purchaser his right to his commission depended upon whether he found and produced one who was able, ready and willing to buy on the terms prescribed by the principal, and that when the broker produced such a purchaser he was entitled to his commission although the sale was not consummated because of the inability of the vendor to comply with his offer, and, further, that a broker in such a case, in the absence of any notice to the contrary, had the right to, act on the assumption that his principal had a marketable title. However, in these cases the Court stated that the general rule was not applicable because the defendant’s inability' to convey the property was due to a conclition arising subsequent to the execution of the broker’s contract.
In the case at bar the objection to the title of the defendant was based upon Article 1504 and 1505 of the LSA-Civil Code which state:
Article 1504:
“Reduction of donation — Suit for— Forced Heirs. On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.”
'Article 1505:
“Disposable portion — Method of calculating. To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property •belonging to the donor or testator at the time of his decease; to that is' fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.
“The sums due by the estate are deducted from this aggregate amount, and the disposable quantum is calculated on the balance, taking into consideration the number of heirs and their qualities of ascendant or descendant, so as to regulate their legitimate portion by the rules above established.”
The District Judge was correct in his conclusion that the title tendered to the prospective purchasers by the defendant was not marketable and that the defect in the title which made it unmarketable existed at the time the option agreement-was signed, for under the cited articles of the Code the donor’s forced heirs or their heirs or assigns could, within five years after the death of the donor, sue for. a reduction of the donation should it have exceeded the disposable portion. LSA-C.C. art. 3542.
There was no change in the title of the defendant from the date that she acquired it by donation and the date upon which she entered into the contract to §ell and sub *726 sequently thereto her title at all times was clouded with uncertainty and a possibility of future litigation, under the cited articles of the LSA-Civil Code.
The judgment of the lower court in overruling the exception of no right or cause of action was correct.
It is shown by the record and admitted that the plaintiff knew that the defendant had acquired title to the property by donation from her former husband, W. L. Green, and therefore it is contended on the merits that if the title was not marketable by virtue of the known donation, that such knowledge precluded the plaintiff from recovering the commission.
In the case of Leaman v. Rauschkolb, supra, Judge, now Justice, McCaleb as organ of the Court reviewed the jurisprudence touching upon the rights of real estate agents to the collection of a commission under contract, and had the following to say [1 So.2d 339]:
“A review of the applicable jurisprudence reveals the following: For many years, the Courts of Appeal of this State had established the rule, which is in line with the common law authorities, that a real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, able and willing to 'buy on the terms prescribed by the vendor; that he has the right to assume that his principal has a marketable title and that, when he finds a purchaser acceptable to his principal, his obligation has been fulfilled even though the sale is never consummated because of the fault of the principal or because of the latter’s inability to -furnish a title free from defect. See Gristina v. Nunez, 8 La.App. 531; Loyacano v. Succession of Thompson, 4 Orleans App. 345; Gurley & Parkinson v. Loeffler, 14 Orleans App. 424; Palmisano v. Stewart, 3 La.App. 66; Dauterive v. West India Transportation Corp., 3 La.App. 319; Barry v. Guiffria, 10 La.App. 123, 120 So. 878; Devereaux & Ashby v. Rochester, 10 La.App. 430, 120 So. 658; Clesi v. Thacher, 12 La.App. 55, 125 So. 194; and Mercer v. Dambly, 16 La.App. 354, 133 So. 455.
“The views expressed by the Courts of Appeal in the above cited cases were subsequently approved in the year 1930 by the Supreme Court in Mathews Bros. v. Bernius, 169 La. 1069, 1070, 126 So. 556, 558, where that court; after citing 2 Corpus Juris, pages 769 and 770, as authority, observed that, where the broker had produced a purchaser acceptable to his principal, his obligation was fulfilled in spite of the fact that a sale could not be consummated as a consequence of the inability of the principal to convey a marketable-title. And, in its consideration of the-question, the court -made it very clear that the right of the agent to a commission is not in any way dependent upon the validity of his principal’s title, for it said:
“ ‘The broker, in such a case, in the-absence of notice to the contrary, has-the right to act upon the assumption that his principal has a marketable, title.”-’ .
******
«* * * we discern, therefore,, that it is the view of the Supreme Court that agency contracts of this-kind should be interpreted to mean that, the vendor hires the real estate agent, with the intention of becoming liable-for a commission only in the event a. sale of the property is consummated;, that explicit provisions to the contrary contained in the contract will not be enforced, since, to do so would lead, to an absurd consequence and that the-vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his-title, at the time he agreed to sell, was-not marketable. If, on the other hand,. *727 it appears, as in the.Deano case, .that-the vendor had a marketable title to the property at the time he agreed to sell it and subsequently, through no fault of his, it becomes encumbered so that it cannot be transferred, then the real estate agent is not entitled to a commission.”
See also Harvey v. Sims, La.App., 198 So. 389; Guy L. Deano, Inc. v. Michel, supra.
It was held in the case of Caruso-Goll v. D’Alfonso, La.App., 1 So.2d 120, that for notice of principal’s defective title to bar a broker’s right to commission, the notice must be actual and broker is not required to investigate records of the conveyance office to determine whether principal is the record title holder.
In the present case, the lower court correctly found that while the plaintiff knew that the defendant had acquired title to the property by donation, that nevertheless there is no evidence to show that the plaintiff had actual knowledge that such a title was not marketable by virtue of our laws upon the subject, supra, and further, that there was no presumption chargeable to him of the law which would constitute actual knowledge on his part of the defect in defendant’s title. In so concluding he was correct.
On the question of knowledge and the marketability of the property, the District Court had the following to say:
“It appears from the testimony of plaintiff, which testimony defendant has not seen fit to contradict, that at the time the agreement was entered into defendant also was of the opinion that she could convey a marketable title to the property and in effect so advised plaintiff when she objected to her ex-husband signing the option agreement because ‘he had nothing to do with the property’
“Defendant, in fact, has contended in ■this suit and her counsel argued in support of the exception of no right or cause of action that she did have a marketable title .at the time the option agreement was entered into, although the court concluded otherwise in disposing of that exception. Under those circumstances it is logical to conclude that plaintiff believed that defendant could convey a marketable title and that he was in good faith in obtaining a bona fide offer for the property.”
The plaintiff, under the jurisprudence not being required to investigate the records of the conveyance office, was equally relieved of any legal obligation or duty to employ an attorney for the purpose of giving him a legal opinion as to the defendant’s title or specifically as to the status of the donation.
Counsel for defendant contends that the case of Sanford & Co. v. Waring, 209 Ky. 489, 273 S.W. 43, 44, is on all fours with the case at bar. In that case the court held that the plaintiff-broker was not entitled to recover a commission from the defendant, a sale which the broker procured having failed of consummation because of a defect in defendant’s title to the property. In the Sanford case, it appeared that the defendant held title to the property under a deed conveying the land to him for life, and at his death to his heirs and assigns. The plaintiff had knowledge that the owner had only a life interest in the property, but the owner’s two heirs, a son and a daughter, agreed to sign the deed. The broker then accepted the listing and found a purchaser. It appears that where such a life interest is conveyed to a party with the provision that at his death it will go to his heirs and assigns, there would be no way of determining until the death of the owner of the life interest who those heirs and assigns ■ might be. In holding that the plaintiff in the cited case could not recover the Court stated:
“When Mr. Waring told Mr. Sanford that he had only a life interest in the property, the broker had knowledge of such defect of title as would be sufficient to put a reasonably prudent person on inquiry. He was then informed that .Mr. Waring did not have title; neither of them was a lawyer; neither of them perhaps understood the legal effect of the deed under which *728 Mr. Waring held. But when he knew that Mr. Waring only had a life estate, it was incumbent on him as on Mr. Waring to make inquiry as to the title. Mr. Waring did everything that he could to carry out the contract. The contract failed from a defect of title, of which Mr. Sanford had notice when the contract was made. The court therefore properly refused to give a peremptory instruction in favor of appellants.”
Counsel for defendants also cite a decision by the Supreme Court of Washington in Best v. Kelley, 155 P.2d 794, 799, 156 A.L.R. 1387, in which the Court held:
“If a [real estate] broker, at the time he accepts a listing from the bwner, knows of any defect in the owner’s title, or is aware of facts sufficient to put a reasonably prudent person on inquiry, which if-followed with reasonable diligence would advise him of any such defect, the broker is not entitled to recover a commission, if the sale' fails because of such defect.”
We believe that the District Court’s distinction was correct as between the cases cited and the one under consideration. In the Kentucky case, it is clear that the broker had actual knowledge of the fact that the principal had only a, life interest and no title, whereas in the instant case, while the broker knew that the defendant acquired the property by dpnation, it is equally true that she also acquired a title in fee to the land. The term “life interest” would put anyone on guard and should inform anyone by its self definition of an interest only during life, whereas -the same is not true with regard to the term “donation”. The real crux of this matter is whether or not there is a legal presumption that the plaintiff was chargeable with knowledge of the effect' of ¿ donation under the' Articles of the LSA-Civil Code cited above. Under our jurisprudence he is not chargeable with such knowledge by mere presumption but must have actual knowledge of such fact and has a right to assume that the principal has a marketable title»
The judgment of District Court is correct and should be affirmed.
MINOS D. MILLER, Jr., serving as judge ad hoc.
CAVANAUGH, J., recused.