MATTHEWS BROS. v. BERNIUS

———

(July 1, 1929. Opinion and Decree.)
(October 21, 1929. Rehearing Refused.)
(December 3, 1929. Writ of Certiorari and Review Granted by Supreme Court.)

———

204

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiffs, appellants.

Fred Zengel, Jr., of New Orleans, attorney for defendant, appellee.

JANVIER, J. This is a suit by a firm of real estate agents seeking to recover a commission earned in effecting a contract for the sale of real estate.

Defendant, at the time the contract of sale was entered into and at the time she made the contract with the agents, was the wife under the community of acquets and gains of Robert Bernius.

The property in question, though purchased during the existence of the community and with community funds, had been placed in defendant's name.

A written brokerage contract had been entered into between plaintiffs and defendant under which it was agreed that plaintiffs should attempt to sell the property for a certain price, their commission to be 4 per cent of the said price.

There is some dispute as to whether defendant sought out plaintiffs and, on her own initiative, listed the property with them, or whether they solicited the listing. We do not see that a determination of this disputed question is necessary, as there is no doubt that the agreement was made, no matter who initiated the negotiations which led up to it, and that plaintiffs, acting under the contract, produced a purchaser.

Defendant, believing herself to be the owner of the property, thought that she had the legal right to sell it without her husband's consent or authorization.

Plaintiffs, assuming that the property was separately owned by defendant, did not require that the husband join the wife in authorizing them to attempt to find a purchaser.

A purchaser, ready, able, and willing to pay a price satisfactory to defendant, was produced by plaintiffs, a written offer was made, and it was accepted in writing by defendant.

The attorney for the prospective purchaser, upon examining the title to the property, discovered that it belonged to the community and not to defendant separately, and advised his client not to accept title unless the husband would join his wife in transferring it. This he refused to do and the sale was never consummated.

The agents now sue for their commission.

Payment is resisted on two grounds:

First, that the commission was to be due only if a sale was consummated.

Second, that the contract between defendant and plaintiffs was null ab initio as it contemplated the sale by the wife of community property without the authority of the husband.

We can see no merit in the first contention. The contract contains no special stipulation making the payment of the commission dependent or contingent upon the consummation of the sale. On the contrary, it appears to be the usual brokerage contract under which the broker's full duty was performed when he produced a contract signed by one ready, able, and willing to buy and to pay the price. Jordy vs. Salmen Brick & Lumber Co., Ltd., 121 La. 457, 46 So. 572; Succession of Fairchild, Teissier's Orl. App. Dig. p. 31; Corpus Juris, vol. 2, p. 769, Agency.

The second contention is not so readily disposed of.

It is conceded that prior to the enactment of the various statutes granting so-called emancipation to married women, to-wit, Acts No. 94 of 1916, No. 244 of 1918, No. 219 of 1920, and No. 132 of 1926, a married woman, in accordance with Rev. Civ. Code, art. 1782, was under such absolute and complete disability as to nullify any attempt by her to contract unless with the authority of court or of her husband. She was, until the passage of those acts, classified with interdicts, persons of insane mind, and minors. Any one who dealt with a married woman did so at his peril.

Defendant contends that the statutes referred to are not general in the relief they grant to married women, but were intended to grant only a limited emancipation, which included no general right to contract but only the privilege of dealing with reference to separate property. Of course, where a person is laboring under a general disability and is permitted to do only such things as come within specified exceptions, it is the duty of one dealing with such a person to make certain that the act done or the contract relied on is within the exception. On the other hand, where one is generally able to contract and is prohibited from contracting only in specified exceptional cases, persons may deal with him or her under the assumption that no disability exists, and it is the duty of him or her who seeks to take advantage of the disability to advise the other of it and to prove that the contract sought to be made is prohibited.

It therefore follows that, if, as a result of the acts referred to, a married woman has been generally relieved of all disability to contract except that her contracts shall not affect the community, it seems to us that the real estate agents were justified in assuming that defendant was dealing with property with reference to which she had the right to contract, and were not required, before accepting the listing of the property, to cause the title thereto to be examined. Particularly does this seem reasonable when it is remembered that a real estate agent as a general thing is not required, before making a contract contemplating the sale of real estate, to cause the title to be examined to determine whether the person who lists it is really the owner. Gurley vs. Loeffler, 14 Orl. App. 424; E. J. & B. F. Camp Lumber Co. vs. Tedder, 78 Fla. 183, 82 So. 865; Cofield vs. McGraw & Garner, 16 Ala. App. 369, 77 So. 981.

That the statutes in question, particularly Act No. 244 of 1918, were intended to give to married women the full and complete right to contract, except to such extent as their contracts might affect community property, was decided by our Supreme Court in S. B. Hicks Motor Co. vs. Caldwell et al., 148 La. 21, 86 So. 598.

There a married woman had indorsed notes of another and, on being sued, had set up a defense identical with that we are now considering. The Court of Appeal had said:

"We hold that the authority granted to married women by the acts under consideration, to sign contracts without being authorized by their husbands, relates exclusively to contracts with reference to their separate paraphernal property."

The Supreme Court, in reversing the decree of the Court of Appeal and particularly with reference to the language just above quoted, said:

"We are unable to concur in the view thus expressed."

It thus appears that the interpretation of those statutes, so far as the question now presented is concerned, is no longer within our province.

It is true that the contract for the sale of the property could not be specifically enforced, because that contract would have affected the community, but we see no reason why the brokerage contract should not be binding. Mrs. Bernius was under no general disability.

For the reasons we have given, Matthews Brothers were justified in assuming that she had the right to make the contract with them and they were under no obligation to examine the title to the property. It might well have been that Mrs. Bernius hoped that, by getting an offer for the property, she could persuade her husband to accept it. At any rate, whatever her reason, she assumed the position of negotiorum gestor and with it she assumed its obligations.

Suppose that, instead of offering to sell real estate, she had entered into a contract with plaintiffs under which they were to attempt to buy for her a certain piece of property she wanted, and suppose that they were successful in their negotiations. Could she defeat their rights to a commission provided for in the contract by simply saying "I have no separate funds with which to buy and therefore you can't hold me to my contract?"

Our Supreme Court has held that the statutes referred to give married women the general right to contract. It is their duty to so use this right as not to affect community property. If they make a contract which would affect community property, the result is that the contract cannot be enforced, but they are personally liable, and this liability may be satisfied out of their separate property, if there is any.

The brokerage contract stipulated for attorney's fees in the event of suit. Thirty-eight dollars is asked for on this item, in addition to the principal demand for $192. We think the fee asked for is reasonable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiffs and against defendant, Mrs. Robert Bernius, in the full sum of $230 with legal interest from judicial demand and for all costs.