No. 3110

**Second Circuit**
(Second Division)

———

MERCER v. DAMBLY

———

(April 9, 1931.  Opinion and Decree.)
(May 7, 1931.  Rehearing Refused.)

———

Byron A. Irwin, of Shreveport, attorney for plaintiff, appellee.

B. F. Roberts, of Shreveport, attorney for defendant, appellant.

CULPEPPER, J.  This is a suit for the recovery of $400 as commission for alleged services performed by plaintiff, a real estate broker, for defendant, growing out of defendant's listing with plaintiff for sale a certain tract of land belonging to defendant.  From a judgment in favor of plaintiff, defendant has appealed.

The evidence shows that on April 22, 1926, defendant listed with plaintiff for sale, on one of his regular written blank forms used for that purpose, 160 acres of land at $75 per acre, on terms of one-third cash and the balance in three equal annual payments at 8 per cent interest; the time in which plaintiff was to have to make the sale was ten days.  The ten days expired without any sale being made, although plaintiff made considerable effort to sell, and incurred some expense in that connection.  Thereafter plaintiff, with the verbal consent of defendant, continued his efforts to sell the property.  After some few weeks of effort, plaintif, not being able to get an offer at $75 per acre, suggested to defendant he might be able to sell at $62.50 per acre, and that he would like to try to sell at that price.  Defendant states he told plaintiff to see what he could do, expressing his willingness to let plaintiff sell at that price.

Plaintiff testified he tried to make a sale at $62.50 per acre and failed; that then he consulted with defendant and told him he could get $50 an acre, and requested permission from defendant to sell at that price, and on the same terms already authorized.  He says defendant did not at that time agree, but that in a day or two he did agree to it and told plaintiff to go ahead and close out the sale at that price.  Plaintiff then saw Mr. Phillips, his prospective purchaser, and the latter

agreed to purchase at that price and those terms.

Mr. Phillips was the man to whom plaintiff had been trying to sell the property. Defendant denies he ever agreed to let plaintiff sell his property at $50 per acre, "only, or unless it was absolutely necessary."

Defendant a little later in his testimony said he would not consider $50 an acre, "unless it was a last resort, I didn't want to take $50.00, did not think it was enough." He admits he was hard-pressed for cash at the time; that he needed the money, and had it not been for that condition he would not have sold his property at all. He admits Mr. Mercer advised him that he had found a purchaser, namely, Mr. Phillips, at $50 an acre.

The testimony shows that plaintiff and defendant, and Mr. Phillips, the prospective purchaser, then had several consultations regarding closing out a sale at $50 an acre. Mr. Phillips drew up a contract for the sale in which he specified the deferred payments to bear 7 per cent interest. Defendant objected to the rate of interest because he said he would be unable to cash the notes unless they bore 8 per cent interest. Plaintiff conferred with Mr. Phillips, who agreed to pay 8 per cent, and the contract was changed to 8 per cent. Defendant, according to the testimony of plaintiff and Mr. Phillips, agreed to sell on those terms and promised to sign the contract, saying he had left his duplicate of the contract at his home at the time, but would sign it and return it the next day. This he did not do. Defendant admits receiving the contract and taking it home with him, but denies he ever agreed to sign it. He admits conversing about putting a clause in the deed providing that he was to receive $150 an acre in event oil should be discovered on the land within a certain time. His testimony regarding conversations and agreements as to the contract, terms, etc., appeared to be evasive, hesitating, not being able to remember things which apparently he should remember as well as other things he testifies about, in which his memory appears to be good. He permitted all these negotiations to go forward toward a consummation of the sale in a manner which would indicate he must have given his consent to what was being done, all of which led plaintiff and his prospect to understand and believe defendant was going to go through with the deal.

The testimony shows Mr. Phillips was ready, willing, and able to purchase the property and to comply with the terms set forth. He came to every change in the terms that defendant suggested and demanded, even agreeing at last to cash the notes himself and relieve defendant from having to go to the trouble of cashing them at the bank.

It developed that during the last few days these negotiations were being carried on, defendant had begun negotiations with another party on his own initiative for the sale to him, and in a very short time thereafter did sell to this party at a much larger sum.

The testimony shows conclusively, we think, that defendant, while doing so reluctantly, did agree and consent to accept the price offered by Mr. Phillips and the terms finally arrived at, doing so for the reason, the most important reason being that he was in much need of cash money and was willing to accept that price, think-

ing at the time it was the best that could be done. Then, later, he found another person who offered to pay more, and in disregard of his obligations to sell to plaintiff's acquired purchaser, sold to the other party. The evidence shows conclusively that plaintiff procured a purchaser who was able, willing, and ready to purchase, for the price and upon the terms verbally agreed upon by defendant. Under these circumstances defendant is liable.

The lower court, evidently thinking the evidence warranted plaintiff's right to recover, gave judgment accordingly. This court is of the same opinion; therefore, the judgment of the lower court is affirmed.