The plaintiff in this suit is a duly licensed Real Estate Agent of Lafayette, La. He claims the sum of Fifteen Hundred ($1500.00) Dollars, less a credit of Two Hunderd Seventy Six and 78/100 ($276.78) Dollars as a commission for alleged services in procuring a purchaser for a lot of ground situated in Lafayette, listed with him by defendant, who represented himself as, and acted as, agent for the Estate of Achille Figaro. Plaintiff had become the owner of a 93/504th interest in the property by purchase from one of the Figaro heirs — Emma Figaro — October 20, 1944.
The listing in question was given August 15, 1945, and appears in the record. It contains the following:
"It is agreed and understood that agent is to offer this property for Forty Thousand *Page 292 
($40,000.00) Dollars, and is to retain Fifteen Hundred ($1500.00) Dollars as his commission. The remaining Thirty Eight Thousand Five Hundred ($38,500.00) Dollars is to be divided between the owners in proportion to their various equities."
Plaintiff claims to have secured a purchaser, the Gulf Refining Co., which was ready, willing and able to purchase the property during the term of listing, and as provided by the listing, and to have advised defendant of this fact, and requested that defendant transfer the interest of the heirs of Achille Figaro and his wife to the said Company, without avail. He made formal demand, in this connection, on November 6, 1945, as shown by registered letter addressed to "Oscar Figaro, Agent, Estate of Achille Figaro, Lafayatte, Louisiana."
Defendant admitted the listing, but denied all the remaining allegations of plaintiff's petition. The defense was that plaintiff had not secured a purchaser who was willing to pay the price called for in the listing.
Under the issues presented, as above set forth, judgment was rendered by the lower Court in favor of plaintiff and against the defendant for the sum of Fifteen Hundred ($1500.00) Dollars, subject to credit of Two Hundred Seventy-Six and 78/100 ($276.78) Dollars, with legal interest thereon from judicial demand, until paid, and all costs. From this judgment the defendant appealed.
Plaintiff moved to dismiss the suspensive appeal for the reason that 1) the appeal bond was filed too late, and, in the alternative, 2) that the order granting the suspensive appeal was defective, null and void, because it fixed "the amount of the bond in the sum of Two Thousand ($2000.00) Dollars as is provided for by law."
The record discloses that notice of judgment was accepted by defendant-appellant on January 26, 1948. The order for a suspensive appeal was granted February 6, 1948. The bond furnished is dated February 6, 1948. On the left hand side there appears the following: "Signed and acknowledged before me and filed on above date. (Signed) Valsin Benoit, Dy. Clerk of Court and Ex-Officio Notary Public." (Italics ours.) At the bottom of the said bond appears the following: "Filed this 7th day of Feb., 1948. (Signed) Valsin Benoit, Dy. Clerk of Court."
Appellee contends that the last day for perfecting the appeal by filing bond was February 6, 1948, and that the entry appearing at the bottom of the bond governs, that, therefore, the bond was filed too late. Appellant contends that the entry at the left hand side of the bond, above-mentioned, controls, and that, accordingly, the bond was filed in accordance with all legal requirements.
[1, 2] There is no evidence in the record to explain the discrepancy existing between, the two dates. They were made by the same deputy. It being the policy of the appellate Courts of our State to uphold appeals, if possible, there being no showing why the two dates were entered on the bond, it being concluded that the second entry was superfluous and of no effect, and that the first entry of filing controls, we agree that the bond was filed on February 6, 1948, and was within the time prescribed by law.
[3] With reference to the alternative ground for dismissal we must consider the order, which is as follows:
"Let the petitioner be and he is hereby granted suspensive appeal * * * according to law, upon his furnishing bond, withgood and solvent surety in the amount of Two Thousand and no/100 ($2,000.00) Dollars, as provided by law." (Italics ours.)
Appellee contends that since the judgment was rendered for a specific amount the trial judge did not have the authority to fix the amount of the bond in a specific amount in view of the provisions of Article 575 of our Code of Practice which provides for a bond in such cases in a sum "exceeding by one-half the amount for which judgment was given, including interest allowed in said judgment to date of appeal bond."
By mathematical calculation, a bond in the sum of Nineteen Hundred Forty Three and 90/100 ($1943.90) Dollars would have been sufficient. Since defendant furnished bond in excess thereof, it is our opinion that the contention of appellee is erroneous; *Page 293 
that the fixing of the bond by the lower Court at a specific amount is of no moment. We believe that the bond furnished was "according to law", and sufficient for the purposes of this appeal; and accordingly, the motion to dismiss is denied.
It appears that plaintiff had subsequent to his purchase, and prior to the listing out of which this suit arose, the property listed with him for a period of sixty (60) days, commencing January 20, 1945, when he was endeavoring to sell it for a War Memorial site. He had from time to time received certain sums of money from Oscar Figaro, who acted as agent for the estate of Achille Figaro, from the rents and revenues of the property.
Both prior and subsequent to plaintiff's demand that defendant transfer the property to the Gulf Refining Co. he had numerous conversations with defendant and with defendant's attorney relative to the said transfer. There appears in the record a letter to plaintiff from the Gulf Refining Co., dated September 13, 1945, advising him that the Company had concluded to purchase the property subject to defendant's ability to furnish a good marketable record title free from all liens and encumbrances and with full and lawful right to sell the same; the grantor to furnish a full abstract of title showing a good marketable title and make available such other information as may be required to complete the title examination; defendant to pay all taxes and outstanding paving or other assessments now maturing or maturing in the future; taxes for the year 1945 to be pro-rated as of the date of purchase.
While the listing did not so provide defendant furnished the abstract above referred to and paid for same. From a letter from a representative of the Gulf Refining Co. to Mr. Daniel DeBaillion, attorney, Lafayette, dated September 18, 1945, from his reply dated September 20, 1945, also appearing in the record, and from testimony of both plaintiff and defendant, it appears that the question of the opening of successions of Oscar Figaro and his wife and some of their children who had died subsequently to them, had been discussed, but there is no positive testimony that this was an absolute requirement of the prospective purchaser. It is not shown that defendant endeavored to show a marketable title by ex parte affidavits, which would have connected up the showing made by the record title, as by showing the heirs, etc. where the record title rests in one deceased. Reeves v. Roberts, 294 Mo. 593,242 S.W. 956, 957. This would have satisfied the legal requirements, and should and perhaps would have been acceptable to the Company's attorney. His letter indicates such would have been the case.
[4] There were delays, and on November 8th, defendant's attorney advised plaintiff, in answer to plaintiff's letter of November 6th that defendant was willing and ready to sell and deliver "such interest as he has or may hold Power of Attorney to sell imediately upon your compliance with the terms and conditions of such listing as you hold." In his letter we also find the following: "As you well know Oscar Figaro does not represent all the co-owners in the particular property which you have reference to." This last circumstance is, to our mind, the reason why the transaction was not consummated, notwithstanding, appellant gave as his reason for not selling the requirement by the purchaser that the owners pay all assessments against the property, pro-rate the taxes, and open the successions, thereby reducing the net price called for in the listing, below Thirty Eight Thousand Five Hundred ($38,500.00) Dollars. Suppose there had been a prior existing mortgage on the property of Five Thousand ($5,000.00) Dollars? Could appellant claim that an offer of Forty Five Thousand ($45,000.00) Dollars would have been necessary to comply with the listing? We think not. These are not costs or charges incident to or resulting from the sale of the property. Could appellant have refused to transfer the property because he was required to pay for the internal revenue stamps which likewise constitutes encumbrances on the property, and must be paid for by the vendor? We think not. When the price of Thirty Eight Thousand Five Hundred ($38,500.00) Dollars net was mentioned this contemplated the selling price, less the real estate agent's *Page 294 
commission. The remarks on the listing can lead us to no other conclusion. It was not shown that appellee had any knowledge of any defects in title, or want in authority of Oscar Figaro to act for the heirs for whom he represented himself as authorized to act when he signed the listing. It is shown that appellant was always ready to transfer his interest in the property to the prospective purchaser. He even agreed to pay his pro-rata of the costs of opening the successions which had been raised in connection with the transfer of the property or in connection with the perfection of the title thereof.
[5] We are of the opinion that plaintiff secured a firm offer to purchase the property by a party who was ready, willing and able to purchase under the terms and stipulations of the listing, and is entitled to his commission, irrespective of the fact that the transaction was not consummated. As we have said before, Oscar Figaro was not in a position to convey the entire
interest he held himself out as authorized to sell when he signed the listing. In the case of Doll v. Russo, et al., La. App., 7 So.2d 406, judgment was rendered in favor of a plaintiff real estate broker against one who had listed property to which he did not have title.
[6, 7] There are numerous cases which hold that a real estate broker is entitled to a commission under circumstances as presented by this case. The Court has carefully examined the following cases: Matthews Bros. v. Berniur, 12 La. App. 203, 123 So. 389; Clesi v. Thacher, 12 La. App. 55, 125 So. 194; Mercer v. Dambly, 16 La. App. 354, 133 So. 455; E. A. Carrere Sons v. Michel, La. App., 144 So. 540; Leaman v. Rauschkolb, La. App., 199 So. 663, 1 So.2d 338, 339. In effect the Courts have held in these cases that:
"A real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, able and willing to buy on vendor's terms, and has right to assume that his principal has marketable title, and when he finds an acceptable purchaser, his obligation has been fulfilled even though sale is never consummated because of principal's fault or inability to furnish title free from defect."
The above quotation is from the Leaman v. Rauschkolb case. To further bring to light our jurisprudence on this point the Court takes the liberty of quoting further from the same Leaman case, 1 So.2d at pages 339 and 340, Thus:
"A review of the applicable jurisprudence reveals the following: For many years, the Courts of Appeal of this State had established the rule, which is in line with the common law authorities, that a real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, able and willing to buy on the terms prescribed by the vendor; that he has the right to assume that his principal has a marketable title and that, when he finds a purchaser acceptable to his principal, his obligation has been fulfilled even though the sale is never consummated because of the fault of the principal or because of the latter's inability to furnish a title free from defect. See Gristina v. Nunez, 8 La. App. 531; Loyacano v. Succession of Thompson, 4 Orleans App. 345; Gurley Parkinson v. Loeffler, 14 Orleans App. 424; Palmisano v. Stewart, 3 La. App. 66; Dauterive v. West India Transportation Corp., 3 La. App. 319; Barry v. Guiffria, 10 La. App. 123, 120 So. 878; Devereaux Ashby v. Rochester, 10 La. App. 430, 120 So. 658; Clesi v. Thacher, 12 La. App. 55, 125 So. 194; and Mercer v. Dambly, 16 La. App. 354, 133 So. 455.
"The views expressed by the Courts of Appeal in the above cited cases were subsequently approved in the year 1930 by the Supreme Court in Mathews Bros. v. Bernius, 169 La. 1069, 1070,126 So. 556, 558, where that court, after citing 2 Corpus Juris, pages 769 and 770, as authority, observed that, where the broker had produced a purchaser acceptable to his principal, his, obligation was fulfilled in spite of the fact that a sale could not be consummated as a consequence of the inability of the principal to convey a marketable title. And, in its consideration of the question, the court made it very clear that the right of the agent to a commission is not in any way dependent *Page 295 
upon the validity of his principal's title, for it said:
"`The broker in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title.'"
In view of the particular facts as shown by the evidence and the offerings, we are of the opinion that the judgment of the lower Court, in favor of the plaintiff and against the defendant, is correct. Accordingly, the judgment of the lower Court is affirmed at appellant's costs.
ELLIS, J., absent.