REGAN, Judge.
Plaintiff, Emile B. Doll, a licensed real estate broker, instituted this suit against defendants, Joseph V. Untz and 'Charles E. Untz, co-owners and vendors of property designated by municipal number 2707 Mexico Street, in the 'City of New Orleans, endeavoring to recover a commission of $495 or 5% of the sale price of $9,900, paid to the defendants by the vendee thereof, Miss Mildred Fallo, which commission was earned by plaintiff by virtue of the verbal “contract of exclusive employment” which existed for a period of two weeks and “as the procuring cause of the sale” to Miss Fallo.
Defendants filed exceptions of “no cause or right of action” which were “referred to the merits” and then answered denying the “existence of a listing contract, exclusive or otherwise” and the “performance of any such contract”; defendants further answered and reconvened for the sum of $1130, which sum allegedly represented damages incurred by defendants as a result of another separate and distinct transaction with the plaintiff herein.
The lower court, after a rehearing, rendered judgment in favor of plaintiff and *56 against defendant, Joseph V. Untz, for the sum of $247.50, or one-half of the commission, and dismissed plaintiff’s suit against defendant, Charles E. Untz, and also dismissed defendants’ suit in reconvention against the plaintiff.
Both plaintiff and defendant, Joseph V. Untz, have appealed.
The record is embellished with disputations ad infinitum. The only accord in the testimony of the respective litigants and their witnesses is the continuity of the discord.
In any event, the record discloses that defendants, Joseph Untz and Charles Untz were contractors engaged in the construction of residential property which they subsequently offered for sale. Defendants had completed two residences designated by the Nos. 2707 and 2713 Mexico Street; by written contract they listed No. 2713 with plaintiff for sale, however, this contract and property is not directly, but only collaterally, involved in our determination of the present controversy.
On July 13th, 1950, defendant, Joseph Untz, had agreed to sell No. 2707 Mexico Street to Mr. and Mrs. Dale McLeod. Plaintiff’s salesman, Louis IT. Bernard, was aware of this agreement, but doubting that a sale would materialize because it involved the acquisition of a “G. I. Loan”, persisted in his efforts to secure from defendant, Joseph Untz, (Charles Untz, co-owner, was apparently unknown to Bernard at this time) a listing of the property with plaintiff. Finally, on September 6th, 1950, the McLeod agreement was abrogated and the deposit was returned to the prospective ven-dees.
Bernard testified that on Wednesday, September 6th, 1950, defendant, Joseph Untz, employed him (plaintiff’s firm) to sell No. 2707 Mexico Street for $10,200 through the medium of an exclusive verbal contract to endure for fourteen days; at the time this agreement was entered into, he was told by Untz “to go to his house and he would have the keys over there, and I picked them up from his wife”; (the, key is in evidence and the tag attached thereto bears the municipal No. 2707 Mexico Street). Bernard further stated that this property, together with No. 2713, was advertised by plaintiff’s firm in the “for sale” column of the Times-Picayune Newspaper on Friday, Saturday and Sunday of September 8th, 9th, and 10th, 1950; (copies of which also appear in evidence; that he had, Untz’ permission to place a “for sale” sign, on the property which he posted thereon; on Saturday, September 9th, he met Untz in a neighborhood restaurant and called his attention to the advertisement of the property appearing in the Times-Picayune and' Untz commented “I think you got a nice ad there, Bernard, I think you ought to sell both places”; also on Saturday, September 9th, between 11:00 and 12:00 o’clock he received a phone call from A. H. Frederic, likewise employed as a salesman by plaintiff, who informed Bernard that he had a “very good friend”, Miss Mildred Fallo, who was a prospective purchaser, and since he was unfamiliar with the property, he wanted Bernard to brief him thereon, and that he would visit the property with his prospect on Sunday, September 10th, at 1:30' p. m.; Frederic arrived at the appointed time but without his prospect; he informed Bernard “I understand the lady I had * * already bought the property.”
A. H. Frederic testified that he had ¡been employed by the “Dock Board” for thirty-five years at which time he was “pensioned”' and was now employed by plaintiff as a salesman; that he knew Miss Mildred Fallo, the purchaser of 2707 Mexico Street for over five years because she had been his “principal clerk” at the “Dock Board”; in the forenoon on Saturday, September 9th, 1950, Miss Fallo called him “because she knew I was connected with Doll” to secure a description of 2707 Mexico Street; upon being interrogated “had she seen the ad in the paper when she rang you up”, he. replied “that is up to her”; that after he had been briefed on the. property by Bernard, who was familiar with it, he telephoned Miss Fallo and transmitted the information, at which time, they agreed to “inspect” the property together on Sunday, September 10th, at 1:30 p. m.; in the afternoon of Saturday, September 9th, she telephoned again and informed him that she had purchased the property directly from defend *57 ant, Joseph Untz, and, therefore, it would be unnecessary to keep their appointment on Sunday.
Defendant, Joseph Untz, testified that he and his brother, Charles Untz, - were co-owners of 2707 Mexico Street on September 6th, 1950; he did not give to plaintiff or to his salesman, Bernard, “an exclusive listing contract for two weeks on the property 2707 Mexico Street”; plaintiff endeavored to procure from him “such listing” but he informed Bernard “sell 2713 and then I will talk to you on the other one”; that in the morning of Friday, September 8th, 1950, Emile J. Naquin, Sr., who resides in 2701 Mexico Street, and who had also purchased his property from defendants, telephoned and said he had a prospect. “I went out there and Miss Fallo was there. I signed- her to a contract right there at the table” (Naquin corroborated this statement) ; that plaintiff had sold other property for him and “on the strength of that I gave him 2713, a written listing”, but “we never give any contracts out unless it is written.”
Miss Mildred Fallo testified that she discovered this property in 2707 Mexico Street while she was “in the neighborhood looking at property”; that she stopped at 2701 Mexico Street “and asked if the people there knew anything about the house”; Mr. Naquin called defendant, Joseph Untz, who arrived about fifteen minutes later and after inspecting the property she signed the agreement to purchase for $9,900 on Friday, September 8th, 1950; she knew Frederic, plaintiff’s salesman, because “I worked with him for five years at the Dock Board”; she had occasion to call Frederic on Saturday, September 9th, 1950, which was the day after she had agreed to purchase 2707 Mexico Street direct from the defendant, Joseph Untz “because Mr. Untz had refused to'show me the inside of 2713. He said he had a contract with Doll (plaintiff) to sell, that it was their property to show and he had no right to show it to me. I was curious to see it. * * * I called him. I don’t know if I quoted him the address. I told him there was a property on Mexico Street which his office had for sale. * * * I cancelled the appointment (for Sunday, September 10th, 1950, at 1:30 p. m.) because my family thought it was a foolish idea and they were satisfied with the house I had bought and thought it foolish to go look at another one.”
Defendant, Charles Untz, testified that on Friday, September 8th, 1950, he and his brother, Joseph Untz, were co-owners QÍ 2707 Mexico Street; he did not appoint plaintiff exclusive agent by virtue of an oral agreement to sell tire property nor did he “authorize anyone to give Mr. Doll (plaintiff) an exclusive listing contract on 2707,” although he conceded that his brother, Joseph, had represented him and signed his name in innumerable real estate transactions.
The primary questions posed for our consideration are ones of fact and they are.:
Was plaintiff authorized to sell the property and, if so, was he the procuring cause of the sale of the property No. 2707 Mexico Street to Miss Fallo?
The trial judge resolved the answer to these questions of fact in favor of plaintiff .and our careful evaluation of the testimony contained in the record fails to disclose any error in his judgment in this respect.
In the final analysis, the whole of the evidential picture painted by the litigants and witnesses who appeared herein, reflects that defendant, Joseph Untz, authorized plaintiff’s salesman, Bernard, to sell the property and that Miss Fallo read plaintiff’s advertisement of 2707 and 2713 Mexico Street, appearing in the Times-Picayune on the morning of Saturday, September 9th, 1950,' which prompted her to telephone plaintiff’s salesman, Frederic, on the same day between 11:00 and 12:00 o’clock and obtain through him both a description thereof and an appointment to inspect the property on Sunday, September 10th, 1950, at 1:30 p. m.; that after obtaining the information concerning the property from Frederic, Miss Fallo, visited the property on Saturday, September 9th, where she directly contacted defendant, Joseph Untz, and entered into an agreement to purchase which was dated September 8th, when in fact the agreement was consummated on Septem *58 ber 9th, 1950. If Miss Fallo had really purchased the property on September 8th, then there existed no logical or plausible reason why she should telephone Frederic on September 9th, to obtain from him a description of the property if, as she contends, she had already purchased the property.
In Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621, 622, the Supreme Court stated; “ * * * this court has always consistently held that a broker who was the procuring cause of a sale would be protected as to his commission against any fraudulent or unfair attempt on the part of his principal to deprive him thereof. Grace Realty Co. v. Peytavin Planting Co. 156 La. 93, 100 So. 62, 43 A.L.R. 1096; Grand Agency v. Staring, 156 La. 1094, 101 So. 723.”
The judge, a quo, after deciding that defendant, Joseph Untz, had authorized plaintiff's salesman, Bernard, to sell the property and that plaintiff was the procuring cause of the sale, erroneously reached the conclusion, on rehearing, that plaintiff should have judgment for only half of his claim against defendant, Joseph V. Untz.
The record does not reflect that plaintiff or his salesman, Bernard, knew that defendants, Joseph and Charles Untz, were co-owners of the property; all that plaintiff or Bernard knew was that the McLeod agreement had failed to materialize and that the property was again going to be offered for sale; that the property was being administered by defendant, Joseph Untz, and that he, without making any informative statement relative to the actual co-ownership of the property, authorized plaintiff, through Bernard, to sell the property. Under the foregoing circumstances, the person who assumed the characteristics and prerogatives of owner is liable for the whole commission. This point has ¡been decided by us in Matthews Brothers v. Bernius, 12 La.App. 203, 123 So. 389, 390:
“ * * * a real estate agent as a general thing is not required, before making a contract contemplating the sale of real estate, to cause the title to be examined to determine whether the person who lists it is really the owner. Gurley v. Loeffler, 14 Orl. [Orleans] App.. 424; E. [R] J. & B. F. Camp Lumber Co. v. Tedder, 78 Fla. 183, 82 So. 865; Cofield v. McGraw & Garner, 16 Ala.App. 369, 77 So. 981.
******
“ * * *. Mrs. Bernius was under no general disability.
“For the reasons we have given, Matthews Bros, were justified in assuming that she had the right to make the contract with them and they were under no obligation to examine the title to the property. It might well have been that Mrs. Bernius hoped that, by getting an offer for the property, she could persuade her husband to accept it. At any rate, whatever her reason, she assumed the position of negotiorum gestor and with it she assumed its obligations.”
For the reasons assigned the judgment appealed from is amended by increasing the award from $247.50 to $495. In all other respects it is affirmed.
Amended and affirmed.